[No. 8179.    Department Two.    October 27, 1909.]

W. H. PALMER et al., Appellants, v. ALICE GRAHAM ABRAHAMS, Respondent.[1]

TRUSTS—DEED IN TRUST—EVIDENCE TO ESTABLISH—SUFFICIENCY. In an action to quiet title, the evidence is insufficient to show that an absolute deed made by a husband and wife was in trust, where the wife's testimony to that effect was contradicted by her husband, who testified that he negotiated the sale and that the deed was made upon full consideration.

HUSBAND AND WIFE—COMMUNITY OR SEPARATE PROPERTY—EVIDENCE —SUFFICIENCY. It sufficiently appears that property sold by a husband and wife, and later conveyed to the husband, became. his separate property, where the wife produced no evidence to contradict the husband's statement that he paid for it out of his separate estate, and from her testimony the conveyance would appear to have been without consideration and a gift to the husband.

[1]Reported in 104 Pac. 648.

GUARDIAN AND WARD—SALE OF REAL ESTATE—POWER OF GUARDIAN. A guardian's deed of real estate without any order of court is a nullity.

QUIETING TITLE—EJECTMENT—IMPROVEMENTS—VALUE—EVIDENCE— SUFFICIENCY. A finding that the value of improvements on real property is $400 is contrary to the evidence, where the only testimony on the subject was the affidavits of two witnesses fixing the value at $700 and $1,300, respectively.

QUIETING TITLE — EJECTMENT—IMPROVEMENTS—JUDGMENT—FORM. In an action to quiet title, in which the court finds the title in the defendant subject to the value of plaintiff's improvements, the judgment is bad in form where it permits the plaintiffs to remain in possession until their lien for improvements is paid; and the judgment must establish the rights of the parties in conformity with Laws 1903, p. 262.

Appeal from a judgment of the superior court for King county, Morris, J., entered March 12, 1909, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, in an action to quiet title. Modified.

*F. E. Knowles,* for appellants.

RUDKIN, C. J.—The present controversy arose over the title to Lots 4 and 5, of Block 1, of Dodge's Division of Green Lake Addition to the city of Seattle. The respective parties deraign their title as follows: September 12, 1890, Z. U. Dodge and wife conveyed to Minnie J. Wood. August 8, 1895, Phil Abrahams and Minnie J. Abrahams (formerly Minnie J. Wood) conveyed to Robert M. Eames. December 27, 1895, Eames and wife conveyed to Patrick C. Portley. August 29, 1896, Portley and wife reconveyed to Phil Abrahams. May 12, 1897, Phil Abrahams conveyed to the defendant Alice Graham Abrahams. December 17, 1903, Minnie J. Abrahams, signing herself as guardian for Alice G. Abrahams, conveyed to Charles C. Spencer. December 10, 1904, Spencer and wife conveyed to the plaintiff W. H. Palmer. June 29, 1907, Minnie J. Abrahams and Phil Abrahams, by Minnie J. Abrahams his attorney in fact, conveyed

to the plaintiff W. H. Palmer. .Phil Abrahams and Minnie J. Abrahams intermarried July 31, 1892, were divorced March 8, 1897, and the defendant is their daughter.

The court below found that the title was in the defendant, subject to a lien of $400.64 in favor of the plaintiffs, quieted title in the defendant subject to the plaintiffs' lien, and adjudged "that the plaintiffs surrender possession of said real property to the said Alice Graham Abrahams, upon the payment of their said lien, and that said plaintiffs remain in possession until their lien for the permanent improvements placed upon said realty, and for the taxes paid on said realty for the year 1904, to wit the sum of $400.64 is paid." From this judgment the plaintiffs have appealed.

The theory of the appellants, as advanced in their complaint, was that the property was originally the separate property of Minnie J. Abrahams; that she and her husband conveyed the property to Eames in trust to secure an indebtedness of $200 to Portley; that Eames and wife conveyed to Portley, Portley and wife to Phil Abrahams, and Phil Abrahams to the respondent, and that the property is still impressed with a trust in favor of Minnie J. Abrahams and her grantees. The only testimony offered in support of this claim is that of Minnie J. Abrahams, taken by deposition, in which she says:

"I know the transaction about that deed to Robert M. Eames. Said deed was made to Robert M. Eames to hold the same in trust for me to keep creditors from selling same, as said Abrahams owed doctor bills and claims in Seattle. I ordered said R. M. Eames to deed said property to Patrick C. Portley in trust for me which he did, and said Portley held said property in trust for me, and I received no consideration whatever for said deeds."

Opposed to this is the testimony of Phil Abrahams, taken by deposition, in which he says:

"I remember the deeding of these lots to Robert M. Eames, in 1895. The deed was an absolute deed for the conveyance of title to these two lots and other property of my own

described in that deed. Neither Mrs. Abrahams, nor I ever borrowed any money from Eames or Portley, and it was not intended or understood by Robert M. Eames, Mrs. Abrahams, and myself to be anything else than an absolute deed for all the real property described in the deed, Mr. Portley had nothing to do with this transaction.

"I know what the intentions of the parties to the transaction were from the fact that I had discussed with Mrs. Abrahams, the advisability of selling some of my property in South Park, and other places, and she expressed her desire to sell her two lots at Green Lake, also, I negotiated the sale, and was a party to the transaction, and know that it was negotiated and consummated as an absolute sale of all the property described in that deed and that there was never a word in regard to any one intending it to be anything but an absolute deed.

"Patrick C. Portley had no connection with nor interest whatever in this transaction between Eames, Mrs. Abrahams, and myself. It was simply a sale of this property to Eames and no third person was interested or involved in this transaction in any way whatever.

"This deed to Eames was signed by Mrs. Abrahams, as my attorney in fact, I gave Mrs. Abrahams a power of attorney as a matter of convenience for making transfers of property, my principal reasons were reasons of a domestic nature rather than of a business nature as she wanted the money. I told her myself to sell after I had negotiated the sale with Eames, and I do not remember of ever receiving a cent of the consideration money.

"Minnie J. Abrahams received the money for all the property sold to Eames which includes Lots 4 and 5, Block 1, of Dodge's division of Green Lake addition, I never received nor wanted any money from her property.

"Neither of us had any interest whatever in the transaction between Eames and Portley, we had sold the property to Eames, and our interests in the property ended there."

There is little in the record to corroborate or contradict either witness, and we agree with the court below that the testimony on the part of the appellants is not sufficient to defeat the operation of the deed or impress the land with a trust in favor of the grantors or their successors. The

appellants further contend that, even though the original conveyance was absolute, the property was reconveyed to Phil Abrahams during the existence of the marriage relation between him and Minnie J. Abrahams, and therefore became community property. In this contention the appellants are supported by the legal presumption alone. Phil Abrahams testified that he paid for the property from separate funds owned by him long before his marriage, and Minnie J. Abrahams offered no explanation as to the source of the purchase money, if indeed she did not claim that the conveyance was without consideration, in which case it would perhaps be deemed a gift. Allegations made by Phil Abrahams in a complaint for divorce filed some years before tend to impeach his testimony, but on the whole we feel constrained to accept the finding of the court below, that upon the reconveyance, the property became the separate property of the husband, and the legal title is now vested in the respondent. The alleged guardian's deed was made without any order or authority from any court, and is of course a nullity.

The only remaining question in the case is the value of the permanent improvements which the court below found the appellants had made while holding in good faith, under color or claim of title, adversely to the claim of the respondent. All the testimony relating to this question is found in an *ex parte* affidavit of W. H. Palmer submitted by the appellants, and a similar affidavit of one Green submitted by the respondent, which the parties stipulated might be read and considered as evidence at the trial. The former affidavit placed the value of the lots without the improvements at $250 each, and the value of the improvements at $1,300. The latter placed the value of the lots at $250 each and the value of the improvements at $700. Under this testimony, and there is none other, the finding of the court that the improvements were of the value of $400 is manifestly contrary to the evidence. There is nothing in the record to guide us in fixing the value of the improvements, except the naked state-

ments of these two witnesses, but in this respect we are no more in the dark than was the court below. On the one hand the affidavit offered by the appellants was made by a party in interest who no doubt had in mind the original cost of the improvements rather than their present value, while, on the other hand, he made the improvements and doubtless had a more accurate knowledge of their extent and value than would a mere stranger. Under all the circumstances we think $1,000 is a fair value to place upon the improvements, and we therefore fix the value in that sum. The judgment of the court below was also erroneous in form. It left the appellants in possession of the property with a lien of $400, with no remedy for its enforcement except to retain possession or wage another lawsuit.

The judgment of the court below is reversed, with directions to enter judgment establishing the rights of the parties in accordance with the provisions of the act of March 19, 1903, Laws of 1903, p. 262. In entering judgment the court will accept the values fixed by this court; namely, $250 each for the lots without improvements, and $1,000 for the improvements.

DUNBAR, PARKER, CROW, and MOUNT, JJ., concur.